# EXHIBIT A

## AGREEMENT OF SALE

THIS AGREEMENT OF SALE (this "Agreement"), made this $\underline{21}$ day of ~~August~~ SEPT., 2009 (the "Effective Date"), by and between Brisar Holdings, LLC (hereinafter called "Seller"), and Seymore Rubin, or his assignees and/or nominees (hereinafter called "Buyer"). The Effective Date shall be the last date this Agreement is executed by either Buyer or Seller.

### WITNESSETH:

For and in consideration of the mutual undertakings contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

1.    Property.

(a) Seller hereby agrees to sell and convey to Buyer who agrees to purchase, all that certain lot, piece or parcel of ground (the "Land"), together with the improvements located at 1200 East Erie Avenue and consisting of approximately 150,000 square feet on approximately 1.5 acres, said lot, piece or parcel being more particularly described on Exhibit "A" attached hereto and made a part hereof (the Land, the Improvements are collectively referred to as the "Property").

(b) The sale set forth in this Agreement shall also include (i) all certificates, licenses, permits, authorizations and approvals issued for or with respect to the Property by governmental and quasi-governmental authorities having jurisdiction ("Licenses, Permits and Approvals"), to the extent transferable; (ii) all contracts and agreements relating to the management, operation, servicing and/or maintenance of Property, to the extent Buyer elects to assume the same as provided herein ("Contracts"); and (iii) all appurtenances, easements and other rights and privileges in any way pertaining or beneficial to the Land or the Improvements.

2.    Purchase Price. The total consideration and purchase price (the "Purchase Price"), which Buyer agrees to pay to Seller and which Seller agrees to accept for the Property is One Million Eight Hundred Thousand Dollars ($1,800,000.00) payable as follows:

| | | |
|---|---|---|
| Personal, check at signing of this Agreement (the "Deposit") | $ | 90,000.00 |
| Cash, certified check or federally wired funds at Settlement | $ | 1,710,000.00 |
| TOTAL | $ | 1,800,000.00 |



**EXHIBIT**
D 2

The Deposit shall be paid to Binswanger of Pennsylvania (hereinafter "Escrow Agent") and shall be placed in an interest bearing escrow account pending Settlement as hereinafter defined). Buyer warrants and represents that Buyer has completely filled out the form W-9 and Order to Invest attached hereto as Exhibit "B" and made a part hereof and Buyer understands that no interest will be paid on the Deposit unless and until such form W-9 and Order to Invest is completed and delivered to Escrow Agent. All interest accrued on the Deposit will be paid to Buyer at Settlement or upon the earlier termination of this Agreement, unless such termination shall be as a result of Buyer's default, in which event all accrued interest shall be paid.

to Seller. In the event Escrow Agent incurs wiring fees, such fees shall be charged to Buyer. The Deposit shall become firm at expiration of the Due Diligence Period (hereinafter defined) if this Agreement has not been terminated prior to expiration of the Due Diligence period except as may herein be set out to the contrary.

Buyer's Federal Tax I.D. Number # _____

Seller's Federal Tax I.D. Number #_____

    3.    Title.

        (a)    Buyer's obligation to close this transaction shall be conditioned upon, at Settlement, title to the Property being good and marketable and insurable at regular rates by a title insurance company selected by Buyer licensed to do business in the Commonwealth of Pennsylvania (the "Title Company"), free and clear of all liens, encumbrances, easements, covenants and restrictions other than the following (the "Permitted Exceptions"): (i) the lien of real estate taxes, water rent and sewer charges that are not due and payable on the Settlement Date, (ii) special assessments which are or may be pending, or which have become a lien on the Real Property as of the Settlement Date (but only for installments due after the Settlement Date), (iii) matters which a current and accurate survey of the Property would disclose; (iv) zoning, use and building laws, regulations, ordinances, codes and the like, of any governmental authority or agency applicable to the Property and (v) statutes and/or ordinances now passed or which may hereafter be passed relating to the opening, closing, widening, narrowing, paving or changing the grade or building line of streets or directing other municipal improvements. (vi) seller knows of none in open as of the date of this agreement.

        (b)  If Seller is unable to convey title as set forth above, Buyer shall have the option of either (i) taking such title as Seller can give, without abatement of the Purchase Price, or (ii) being repaid all moneys paid on account by Buyer (together with accrued interest, if any), and Buyer shall also be reimbursed for any title company and survey charges incurred and, if Buyer elects the option in Section 3(b)(ii), there shall be no further liability or obligation by either of the parties hereunder and this Agreement shall become null and void and of no force or effect (except for this Section 3), and all copies of this Agreement shall be returned to Seller for cancellation.

    4.    Property Sold "As Is" and "Where Is."

        If Buyer does not terminate by expiration of the Due Diligence period, it is understood that the Property is being purchased on an "AS-IS" and "WHERE IS" basis and has been inspected by Buyer or Buyer's duly authorized agent; that the same is and has been purchased as a result of such inspection and not in reliance upon any representations, inducements, or promises, either oral or written, made by Seller, Agent or any selling agent or agent of Seller except as expressly stated in this Agreement, and Seller shall not be responsible or liable for any agreement, condition or stipulation not set forth herin relating to or affecting the Property. Excluded from this are all contrary covenants herein and any hereafter made between Buyer and Seller in writing.

    5.    Representations and Warranties.

        (a)  Seller represents that at the time of the Effective Date there exists no notices of an unprotected violation of the housing, building safety, fire or other applicable codes or ordinances, which have been received by or for Seller. Seller will be responsible for the cost and will do all work, repairs, construction or installations which may be required by any such notice, issued and/or served heretofore, as well as any notice issued and/or served hereafter and prior to Settlement by any state, municipal or other constituted public

2

authority. Seller represents further that no assessments for public improvements have been made against the said Property which remain unpaid. Seller will be responsible for the payment of any assessments and charges hereafter made for any public improvements, if work in connection therewith is or was started prior to Settlement.

6.   Settlement.

(a)  Settlement shall be made within thirty (30) calendar days after the expiration of the Due Diligence period without cancellation hereof ("Settlement Date") between 10:00 a.m. and 2:00 p.m. (prevailing time) at the office of Buyer, unless Seller and Buyer agree in writing to a different time and place ("Settlement"). The date and time of Settlement are hereby agreed to be of the essence of this Agreement.

(b)  Realty taxes, water and sewer rentals, and any other lien able items or charges which are properly apportionable under local law or custom shall be apportioned on a per diem basis pro rata as of the date of Settlement.

(c)  State and local realty transfer taxes, if any, applicable to the sale set forth in this Agreement shall be equally divided and half of each paid by Seller and Buyer.

(d)  Possession of the Property is to be delivered broom clean, vacant, free of debris and free of all tenancies and/or occupancies, by executed Deed (defined below) and keys, at the time of Settlement. Said Deed shall be prepared by Buyer or Buyer's attorney and the recording fees paid by Buyer. A survey, if required by Buyer, is to be obtained by, and at the sole expense, of Buyer. Buyer shall submit to Seller a copy of the Deed at least five (5) days prior to the time fixed for Settlement. Buyer shall also submit to Seller a duplicate copy of the Title Report issued by the title insurance company insuring the title for Buyer and a copy of the survey, if obtained, at least fifteen (15) days prior to the time fixed for Settlement.

(e)  Without limitation to other conditions set forth in this Agreement, and notwithstanding anything contained herein to the contrary, Buyer's obligation to close hereunder is expressly contingent upon the satisfaction, or the express written waiver, of the following conditions:

(i)     As of the Settlement, title to the Property shall be as required by Section 3 of this Agreement;

(ii)     All representations and warranties made by Seller in this Agreement shall be true, complete and accurate in all material respects as of the Settlement Date; and

(iii)    Seller shall have performed, observed and complied with all agreements, covenants and obligations to be performed by Seller under this Agreement, including without limitation, the execution and/or delivery of all documents required to be executed and/or delivered by or on behalf of Seller hereunder.

If the conditions precedent in this Sections 6(e) above are not satisfied as of the Settlement Date, Buyer may exercise any of the remedies set forth in this Agreement, or available at law as applicable, or waive such conditions in whole or in part and proceed to Settlement.

3

7.    <u>Closing Documents</u>.

(a) At the time and place of Settlement, Seller shall deliver or cause to be delivered to Buyer or the title insurer the following:

(i) the special warranty deed prepared by or for Buyer executed and acknowledged by Seller in recordable form whereby Seller shall convey to Buyer fee simple title to the Property subject only to the Permitted Exceptions (the "Deed");

(ii) an assignment whereby Seller will assign to Buyer all of Seller's right, title, and interest, in, to and under any warranties, Licenses, Permits and Approvals applicable to the property and such contracts applicable to the property, of seller, which buyer after review agrees to accept and those, will also be assigned to Buyer. Buyer is not obligated to accept any contracts.

(iii) all original Licenses and as many signed originals (or true and correct copies) of the Contracts Buyer will accept, if any, and other items covered by the Assignments as are in Seller's possession, unless previously delivered by Seller to Buyer;

(iv) Such equipment and their operating manuals and all warranties and guarantees, if any, in Seller's possession, and which Buyer in writing agrees may remain, and same shall be left for Buyer. All other equipment, will be removed from the property before settlement by seller at seller's expense.

(v) all master and duplicate keys to all locks for the Improvements which are in Seller's possession; shall be tagged including location;

(vi) a non-foreign person affidavit of seller in form acceptable to I.R.S.

(vii) a Seller's title affidavit and such other documents as may be reasonably requested by Buyer's Title Insurance Company.

(b) At the time and place of Settlement, Buyer shall deliver or cause to be delivered to Seller the following:

(i) the balance of the Purchase Price; on completion of settlement;

(ii) the Assignment; from Buyer, if any, of this Agreement;

(iii) such other documents as may be reasonably requested by Seller or the Title Company to carry out the intent of this Agreement.

8.    <u>Risk of Loss</u>. All risk of loss shall be on Seller prior to Settlement. In the event that there is a casualty or condemnation, Buyer may either (i) continue to Settlement without an abatement in the Purchase Price, but Seller will assign any and all rights to Buyer for insurance proceed or condemnation awa ds, r (ii) erminate this Agreement in which event the Deposit, plus all accrued interest, shall be delivered to B, er and this Agreement shall be null and void and of no force or effect and all copies s all be canceled.

9.    <u>Recording</u>. This Agreement may not be recorded in the Office for Recording of Deeds or in any other government office or place of public record without Seller's prior consent except on Seller's default.

4

10.    Waiver of Tender.  Tender at the time of Settlement of an executed Deed by Seller and the balance of the Purchase Price by Buyer are hereby mutually waived, but nothing herein contained shall be construed to relieve Seller from the obligation to deliver the Deed or to relieve Buyer from the concurrent obligation to pay the balance of the Purchase Price at settlement completion.

11.    Status of Agent.

(a)  It is expressly understood, covenanted and agreed that:

(i)  Agent is acting as an agent only, and will in no event whatsoever be held liable to either party for the performance of any term or covenant of this Agreement, or for damages for non-performance thereof, except for non performance of (a) its obligations hereunder or (b) as may be required for its duties as Escrow Agent or (c) willful misconduct.

(ii)  Agent shall not be bound by any modification, cancellation or rescission of this Agreement except as is in writing and signed by Agent;

(iii)  Seller and Buyer each hereby release Agent from any act done or omitted to be done by Agent in good faith in the performance of its duties hereunder except for gross negligence.

(iv) (A)  Seller and Buyer each acknowledge and agree with Agent that Agent (1) is not an expert in construction, engineering or environmental matters; and (2) has not made, has not been asked to make, and shall not make any representations or warranties with respect to, nor (unless otherwise agreed to in writing) conducted investigations of, the condition or suitability of the Property or any adjacent property, or the environmental condition or suitability of the Property or any adjacent property, including without limitation, any representations, warranties, or investigations with respect to whether (A) the Property or any adjacent property is included or proposed for inclusion on any governmental list of hazardous waste sites or has been contaminated by any substance or waste in any manner which requires disclosure and/or remediation under any law, (B) the Property or any adjacent property contains any environmentally sensitive areas, development on or in which could be precluded or limited under any law, including without limitation, wetlands or floodplains, (C) the Property or any adjacent property contains any above or below ground tanks ("Tanks") or any substance or waste whose removal or disposal is subject to special regulation under any law, including, without limitation, any asbestos or polychlorinated biphenyls, or any petroleum or chemicals stored in any Tanks, (D) any revocations of, or notices of violations have been received regarding any permits or licenses necessary to own or operate the Property or any businesses conducted thereon, and (E) any activities on the Property or any adjacent property which are violations of any laws concerning the handling of any substance or waste by reason of its hazardous or toxic characteristics, the disposal of any substance or waste, the discharge of any substance or waste into the soil, air, surface water, or ground water, or the conduct of activities in environmentally sensitive areas.  For purposes of this Agreement, the terms "substance" or "waste" shall include those materials that are defined, under any law, as "toxic" or "Hazardous" or as "pollutants" or "contaminants", including but not limited to petroleum products. Agent represents to Buyer that Agent has not withheld from Buyer any adverse facts as to the property of which it has knowledge.

(vii)(B)  The provisions of this Paragraph 10 shall survive the termination of this Agreement.

5

(b) Agent is acting as a stakeholder only with respect to the Deposit. If there is any dispute as to whether Agent is obligated to deliver the Deposit or as to whom the Deposit is to be delivered, Agent shall not be required to make any delivery, but in such event Agent may hold the same until receipt by Agent of an authorization in writing, signed by Buyer and Seller directing the disposition of the Deposit and any interest accrued thereon or until the final determination of the rights of the parties in an appropriate legal proceeding. If such written authorization is not given, or proceedings for such determination are not begun within thirty (30) days after Settlement was to have occurred, Agent may, but is not required to, bring an appropriate action or proceeding for leave to place the Deposit and interest in court pending such determination.

12.    Broker.  Seller and Buyer each acknowledge that Agent is the sole, moving, and procuring cause of this sale and as to seller only, in consideration of Agent's services in making this sale and at the time of Settlement, Seller hereby agrees to pay to Agent, Binswanger of Pennsylvania, Inc., Two Logan Square, Fourth Floor, Philadelphia, Pennsylvania, 19103, a brokerage commission in the sum of Seventy Two Thousand Dollars ($72,000.00) (the "Commission").

13.    Default.

(a)    If Buyer is in material default in the observance or performance of any of its material obligations hereunder, after a ten (10) day written notice to Buyer with an opportunity to cure, then Seller may exercise as its sole remedy, the right to be paid the Deposit and all interest earned thereon as liquidated damages for such breach. Such notice must be hand delivered or sent by UPS with proof of delivery and the 10 days starts at delivery.

(b)    If Seller is in default in the observance or performance of its obligations hereunder, after a ten (10) day written notice with an opportunity to cure, then Buyer may exercise such rights and remedies as may be provided for in this Agreement or as may be provided for or allowed by law or equity (including, without limitation, specific performance). Such notice must be hand delivered or sent by UPS with proof of delivery and the 10 days starts at delivery.

14.    Notices.  All other notices to be given to Agent, Seller and/or to Buyer shall be mailed by registered or certified mail, return receipt requested or sent by an overnight service with receipt as follows:

        Seller:        Brisar Holdings, LLC
                       c/o Adel Elsayed – President
                       150 East 7th Street
                       Paterson, NJ 07524
                       Phone: (973) 278-2500
                       Fax:    (973) 278-4670

        Buyer:         Seymore Rubin
                       Seymore Rubin Associates
                       430 N 4th St
                       Philadelphia, PA 19123
                       Phone: (215) 923-3456
                       Fax:    (215) 923-8802

Agent:    Binswanger
Two Logan Square
Fourth Floor
Philadelphia, PA 191.03
Attn:    Daniel F. Cullen, Esq.
Fax:    215-448-6274

15.    Seller's Approval. It is understood that this Agreement is made subject to the written approval of Seller, which approval must be obtained within two (2) days from the date hereof. Seller agrees that in the event such approval is not obtained as herein provided, the Deposit and any other monies paid hereunder by Buyer to Seller or to Agent shall be returned to Buyer. Pending such approval, Agent may deposit in its bank account any sum which may have been received from Buyer hereunder and neither such act nor the endorsement of any check received from Buyer shall be taken as making this Agreement effective without the execution by Seller.

16.    Entire Agreement. This Agreement sets forth all the agreements, promises, warranties, representations, understandings and promises between the parties hereto, and the parties are not bound by any agreements, undertakings or conditions except as expressly set forth herein. All additions, variations or modifications to this Agreement shall be void and ineffective unless in writing and signed by Buyer and Seller.

17.    Successors and Assigns; Assignment. This Agreement shall extend to, be binding upon, and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto. Buyer shall have the right to assign this Agreement, or any of its rights, duties or obligations hereunder to a related party, entity or affiliate after written notice provided to Seller. .

18.    Governing Law. This Agreement shall be construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania.

19.    Agent Statements. Pursuant to the provisions of the Pennsylvania Real Estate Licensing and Registration Act, 63 Pa. Stat. Ann. Sections 455.101 et seq., as amended (the "Act"), Agent hereby makes the following disclosures to Buyer:

(i) Agent is the agent of Seller, not Buyer;

(ii) Section 801 of the Act establishes a Real Estate Recovery Fund. The basic purpose of the Real Estate Recovery Fund is to compensate an aggrieved person for the unpaid portion of a judgment, based on a claim against a person licensed under the Act, for fraud, misrepresentation or deceit in any transaction for which a license is required under the Act. For further information concerning the Real Estate Recovery Fund, Buyer should contact the Pennsylvania Real Estate Commission at 717-783-3658;

(iii) Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation

20.    FIRPTA. Under Section 1445 of the Internal Revenue Code of 1986 as amended, and the regulations issued thereunder, Buyer is required to withhold up to ten percent (10%) of the Purchase Price of the Property unless the Seller provides Buyer with a "nonforeign certificate" or affidavit indicating that Seller is not a foreign person for purposes of the Internal Revenue Code. Agent may be subject to liability if Seller issues a false "nonforeign certificate" or affidavit. Seller hereby agrees to indemnify and hold harmless Agent

7

21.    Due Diligence.  For a period of One Hundred and Fifty (150) days after the Effective Date hereof, (the Due Diligence Period"), Buyer shall have the right to enter upon, go in, on or over the Property for the purpose of conducting building surveys, inspections, soil tests, core drillings, environmental testing and other examinations thereof as Buyer may desire.  Buyer shall repair any and all damage by reason of any such testing if it terminates this agreement and shall indemnify and save Seller harmless from any liability in conjunction therewith.  If Buyer is not satisfied with the results of its inspection of the Property for any reason whatsoever, Buyer in its sole discretion may by the end of this Due Diligence Period or before, terminate this Agreement by giving Seller written notification of such election and the Deposit and all accrued interest shall be returned to the Buyer and this Agreement shall become null and void and of no force and effect and all copies of this Agreement shall be cancelled.  If Buyer does not give Seller such notice within such period, this condition shall be deemed to be, and shall be, waived and Seller and Buyer shall proceed to Settlement as set forth in this Agreement, subject however to section 22 below.

22.    Additional Contingency – Zoning Approval Period.  Buyer shall have One Hundred and Fifty (150) days from the Effective Date to make application with the Department of Licenses and Inspections, and to appeal to the zoning board of adjustments (the "Zoning Approval Period") to pursue any and all entitlements necessary to permit Buyer to operate or have operated a behavioral health treatment center for at risk youth, including long and short term residential care, home based family services, community based group homes, residential care for young mothers and babies, vocational development programs for children, shelter care and diagnostic services, at the herein property. Notwithstanding anything above in this agreement, in the event such approvals are not obtained during the Zoning Approval Period, Buyer may terminate this Agreement and the Deposit plus all accrued interest shall be paid to Buyer and this Agreement shall become null and void and of no force and effect.

SELLER:

Brisar Holdings, LLC

Witness: _____

By: _____
Title: _____
Date: _____

BUYER:

Seymore Rubin

Witness: _____

By: _____
Title: _____
Date: _____

8

The undersigned is joining in this Agreement for the sole purpose of agreeing to be bound by the provisions of Sections 2, 10, 11,19 and any other part hereof applicable to it.

AGENT:

BINSWANGER OF PENNSYLVANIA, INC

By: _____

Daniel F. Cullen, Senior Vice President

9

EXHIBIT "A"

[Legal Description to be attached]

EXHIBIT "B"

[W-9 Form]

11

**[ REDACTED ]**

# EXHIBIT B

Adopted from D.N.J. LOCAL FORM 12

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| In re: | : | **(Jointly Administered** |
|  | : | **Under Case No. 09-38357)** |
| **BRISAR INDUSTRIES, INC., et al.,[1]** | : |  |
|  | : | **Chapter 11 Case Nos. 09-38357;** |
| Debtors. | : | **09-38360; and 09-38362 (NLW)** |
|  | : |  |

**TO: JAMES WALDRON, CLERK**

**INFORMATION FOR NOTICE OF PRIVATE SALE BY THE DEBTORS**

Brisar Industries, Inc., Delvco Pharma Packaging Services, Inc. and Brisar Holdings, LLC (the "Debtors") propose to sell certain property of the estate to the person and on the terms described below:

If any creditor or other party in interest has an objection to the sale, the objection and a request for a hearing on such objection shall be in writing, served upon the trustee and filed with the Clerk of the United States Bankruptcy Court.

Such objection and request shall be filed with the Clerk and served upon the Debtors no later than January 12, 2010.

The Court has scheduled a hearing thereon on January 19, 2010 at:

United States Bankruptcy Court
M.L. King, Jr. Federal Building and Courthouse, 3rd Floor
50 Walnut Street
Newark, New Jersey  07101-1352

If no objection to the private sale is filed with the Clerk of the Court and served upon the Debtors as required above on or before January 12, 2010, the sale will be consummated as proposed on or before March 19, 2010.

The property to be sold, the proposed purchaser and the sale price are:

| | |
|---|---|
| Property: | Certain real property and improvements located at: 1200 East Erie Avenue, Philadelphia, Pennsylvania Consisting of approximately 150,000 square feet on approximately 1.5 acres. |
| Proposed Purchaser: | Seymore Rubin Seymore Rubin Associates 430 N. 4th Street Philadelphia, Pennsylvania  19123 |

---

[1] The joint debtors are Brisar Industries, Inc., Delvco Pharma Packaging Services, Inc., and Brisar Holdings, LLC.

Sale Price:                $1,800,000.00

Higher and better offers will be received.  They must be writing and filed with the Clerk prior to the date set for filing objections.

Request for information about the property to be sold, the prospective purchaser, the price to be paid and other matters should be directed to:

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN
Attn:   Jeffrey A. Cooper, Esq.
Marc D. Miceli, Esq.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Submitted by:

**LAZARUS & LAZARUS, P.C.**
240 Madison Avenue
New York, New York 10016

- and -

**CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN**
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Proposed Attorneys for Debtors-in-Possession,
Brisar Industries, Inc., Delvco Pharma Packaging
Services, Inc. and Brisar Holdings, LLC

BY:___/s/_____
**JEFFREY A. COOPER**

**DATED:**  December __, 2009

#384478v1

2